REQUESTED BY: Michael J. Linder, Director, Nebraska Department of Environmental Quality
QUESTION: Is there still a "400 ton per pollutant" cap on emissions used to compute fees owed by electricity generation facilities of 70 to 115 megawatts?
CONCLUSION: No.
L.B. 634, enacted in 1996, was introduced to give smaller electricity generation facilities, namely utilities in Grand Island, Hastings and Fremont, some relief from the fees collected upon emissions; fees to help fund the air quality work of the Nebraska Department of Environmental Quality (NDEQ). These smaller utilities objected that fees were assessed upon 100% of their emissions of regulated pollutants, whereas larger utilities had the benefit of a cap of 4,000 tons per pollutant. Since the amount of pollutants emitted was directly related to the electricity produced, this meant that the larger utilities had comparatively lower regulatory costs per electrical unit generated.
As originally drafted, the bill would have substituted a 7,000 ton cap for the 4,000 ton cap. The idea was to cause the higher emitters to pick up a greater share of the costs, resulting in the smaller generators being assessed less fees across the board. During the legislative process, the bill evolved into one which left the 4,000 ton cap intact and focused its relief efforts exclusively upon the smaller utilities with nameplate generating capacities of between 70 and 115 megawatts. The legislation provided that utilities in this class, with certain exceptions not pertinent here, would only have to pay fees on the first 400 tons of each regulated pollutant emitted.
The Legislature also announced its intention to modify the formula in the future. It was anticipated that this expected legislation would result in the funding for the program being comprised of fees upon emissions "pursuant to subsection (1)" and fees based upon the actual costs to NDEQ for administering the Clean Air Act program for that particular source. The paragraph concluded with the following guidance: "If the Legislature does not enact such a fee structure prior to June 30, 1998, the department shall calculate the emission fee as set out in subsections (1) and (3)." Neb. Rev. Stat. § 81-1505.04(2) (Cum. Supp. 1998). Paragraph (1) set out the emissions fee provisions, including the aforementioned 4,000 ton and 400 ton caps. Paragraph (3) provided for the adjustment of the amount charged per ton as necessary to cover NDEQ's costs of administering the air quality permit program.
The anticipated legislation did not materialize. Consequently, the Department is to calculate the emission fee as set out in § 81-1505.04(1). However, there is a disagreement between the Department and the utilities which benefitted from the 400 ton cap with regard to what this means, and whether the cap still applies. According to your letter, "[T]he Department believes that after emissions year 1997 (reported July 1, 1998), the 400 ton cap is no longer available to electrical generating facilities to which it formerly applied." The three utilities disagree.
It may help if we review the statutory provisions which bear upon the question. The passage within Neb. Rev. Stat. §81-1505.04(1) which is in issue indicates that in the case of the specified utilities, "fees shall not be paid on amounts in excess of four hundred tons per year for any regulated pollutant through 1997." Neb. Rev. Stat. § 81-1505.04(2) went on to express the Legislature's intent that, "beginning in 1998, fees to be paid to the department by each major source shall be based upon [a new formula]." Neb. Rev. Stat. § 81-1505.04(3), provides that the Department is to "calculate the emission fee as set out in subsections (1) and (3). . . ." if the legislative modification of the formula is not enacted prior to June 30, 1998.
The Department's view is that it must refer back to §81-1505.04(1) in its entirety, which includes the phrase which places a temporal limit upon the 400 ton cap; that is, to the period "through 1997." The utilities, on the other hand, apparently take the position that the Legislature only placed a temporal limit on the 400 ton cap because it was envisioned that the new formula to be enacted would replace it. This new formula would supposedly render unnecessary the 400 ton limit, so it is understandable that the Legislature would announce that it would end in 1997. However, it is unclear why it was thought the new formula would correct the perceived inequity which resulted from the 4,000 ton cap on large emitters unless the 4,000 ton cap was to expire or be eliminated, too; yet the statute was silent on this. The utilities might respond that the Legislature did not need to put a time limit or otherwise express its intention that the 4,000 ton cap be done away with when the new formula came into being. That is something which could be handled when the Legislature enacted the new formula. Quite true. But it is also true of the 400 ton cap. The Legislature did not have to put a time limit on it. But it did. And it is part of the paragraph to which the Department is referred in order to find the formula it should use to calculate emission fees if the new formula failed to materialize. We believe the statute should be interpreted to give the words, "through 1997," meaning. To find otherwise would treat them as mere surplusage.
Review of the legislative history does not help clarify things. Consequently, we believe it best to rely most heavily upon the language of the statute. This language indicates there is a set time limit on the 400 ton cap.
Lending additional support to our conclusion is the fact that the Introducer of L.B. 634 also introduced a bill this past legislative session for the express purpose of eliminating the sunset date on the 400 ton cap. Although the bill was indefinitely postponed, it tends to indicate that the Introducer believed the cap would die absent Legislative intervention, regardless of whether the Legislature replaced the formula by 1998, as planned. See L.B. 1244, 96th Leg., 2nd Sess. (2000), Introducer's Statement of Intent.
In conclusion, the fact that the sunset date on the 400 ton cap remains in Neb. Rev. Stat. § 81-1505.04(1) requires that the statutory fee be assessed on all emissions of regulated pollutants by the utilities in question. Although we understand it will not be a factor with these smaller utilities, we would add the qualification that the 4,000 ton cap still applies.
Sincerely,
 Don Stenberg Attorney General
 Mark D. Starr Assistant Attorney General
APPROVED BY:
DON STENBERG
Attorney General